### E. M. HOLT v. GEORGE W. PATTERSON.

The statute fixing a scale of depreciation for Confederate money during the late war, does not impair the obligation of contracts, and is not in violation of the Constitution of the United States.

CIVIL ACTION on a bond, heard before *Schenck, J*, at Fall Term, 1875, of the Superior Court of CABARRUS county.

The complaint alleged : That George W. Patterson, the defendant, and one W. R. Denny, on the 5th day of November, 1862, covenanted under their hands and seals to pay the plaintiff, one day after date, the sum of two thousand dollars. That certain payments have been made thereon, (setting them out,) and that no other part thereof has been paid.

Plaintiff demanded judgment against the defendant for the value of said covenant, according to the legislative scale, subject to the credits above mentioned.

At the return term of the summons, to wit : Fall Term, 1875, the defendant having failed to answer, the following order was made : " Judgment : judgment to be stricken out if a substantial answer be filed at Chamber's Court at Charlotte."

On January 3d, 1876, the defendant moved the court to strike out the judgment, and that he be allowed to file an answer to the effect following :

That the consideration of the covenant sued on, was Confederate money loaned. At the time said covenant was delivered, Confederate currency was worth in the proportion of three dollars in Confederate money to one of gold, and the defendant offers that a judgment may be taken upon this basis, but resists a judgment in the proportion of $2.50 in Confederate money to one of gold, as established by legislative enactment.

The motion of the defendant was overruled by the court, whereupon he appealed.

*Ship & Bailey*, for appellant.
*Battle Battle & Mordecai*, contra.

READE J. The question is, whether the statute fixing a scale of depreciation for Confederate currency during the late civil war, is in violation of the Constitution of the United States, as impairing the obligation of contracts? The ordinance of the State Convention, and the Acts of the General Assembly upon the subject may be found in Bat. Rev. chap. 34, sec's. 5, 6, 7 and 8.

During the war almost the only money in use was Confederate currency, which, day by day, was decreasing in value as compared with gold, and indeed with any thing else. So it was considered, that when A promised to pay B one hundred dollars, it was not to be supposed that he meant gold dollars, for there were no gold dollars in circulation, nor was there any currency in circulation which was convertible into gold dollars; but that he meant Confederate currency dollars. And if he should be required to pay in gold, or any thing else, then the value of one hundred Confederate currency dollars should be the measure of the value of the promise.

To this it is objected that a "dollar" means a *gold* dollar. In a certain sense that is true. But in common acceptation we may certainly say, Confederate currency dollars, United States currency dollars, and gold dollars. And no one would suppose that each expression means the same. And just as we may show by *express words* what we mean by dollars, or what *sort* of dollars we mean, so we may show by *circumstances* what we mean by dollars. And therefore it was enacted, that the circumstances of the war-times show that a promise to pay dollars, meant Confederate currency dollars, or their value. And then for convenience, a scale of value was fixed. But still the statute does not fix an iron rule for the construction of contracts made during the war. It only provides that they shall be deemed to be solvable in money of

the value of Confederate currency, " subject nevertheless to evidence of a different intent of the parties to the contract."

How then is the contract violated ? The contract is the " intent " of the parties. The statute allows that intent to be shown and to govern. It is only in the absence of proof of the intent, that the statute directs the intent to be presumed.

Admitting that to be so, still it is further objected that the Legislature had not the power to fix an arbitrary scale of depreciation, or standard of value of Confederate currency, but that it must be fixed by the jury in each case.

To this it is answered that if Confederate currency had a definite ascertained value, and that was the value of the contract, then neither the Legislature nor the jury had the right to change or fix it. But if it had no ascertained value why might not the Legislature as well as the jury fix the value ? It had no fixed value. It was changing every day. And it was convenient if not absolutely necessary for the administration of justice, that an authoritative scale should be prescribed.

This statute has been for ten years in existence, and has been administered in innumerable instances without question ; and it is too late to question it now.

There is no error. Judgment affirmed and judgment here for plaintiff.

PER CURIAM.                    Judgment accordingly